**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO**

Andre Williams,

      Plaintiff,

      -vs-

USAA/Garrison Property and Casualty,

      Defendant.

Case No. 1:25-cv-00953

**JUDGE PAMELA A. BARKER**

**MEMORANDUM OPINION & ORDER**

Currently pending before the Court are Defendant USAA/Garrison Property and Casualty's ("Defendant" or "USAA") Motion to Dismiss the Amended Complaint (Doc. No. 17), Motion to Strike the Second Amended Complaint (Doc. No. 19), Amended Motion to Dismiss the Amended Complaint (Doc. No. 20) (the "Amended Motion to Dismiss"), Amended Motion to Strike the Second Amended Complaint (Doc. No. 21) ("Amended Motion to Strike"). Plaintiff Andre Williams ("Plaintiff" or "Williams") filed a combined Opposition to Defendant's Motion to Strike (the "Opposition") and Motion for Leave to File Second Amended Complaint ("Motion for Leave to File Second Amended Complaint. (Doc. No. 22.) Defendant filed a Reply in Support of its Motion to Strike the Second Complaint ("Reply") (Doc. No. 23.)

For the reasons set forth below, Defendant's Motion to Dismiss the Amended Complaint (Doc. No. 17) and Motion to Strike the Second Amended Complaint (Doc. No. 19) are denied as moot, Defendant's Amended Motion to Dismiss (Doc. No. 20) is granted in part and denied in part, Plaintiff's Motion for Leave to File Second Amended Complaint (Doc. No. 22) is granted, and Defendant's Amended Motion to Strike (Doc. No. 21) is denied as moot.

## I.      Background

### a.  Procedural History

On May 12, 2025, Williams, proceeding *pro se*, filed the above-entitled action against USAA and moved to proceed *in forma pauperis*.  (Doc. Nos. 1, 2.)[1]  On July 31, 2025, the Magistrate Judge granted Plaintiff's application to proceed *in forma pauperis*.  (Doc. No. 4.)  In the Complaint, Williams asserted claims for breach of contract, bad faith insurance practices, defamation, tortious interference with future coverage, and emotional distress, and included a request for injunctive relief. (Doc. No. 1.)  On August 1, 2025, this Court ordered Plaintiff to remedy several deficiencies contained therein.  *See* (Doc. No. 5.)

In its Order, the Court noted that Plaintiff had failed to identify the insurance policy at issue in the lawsuit.  (*Id*.)[2]  Plaintiff filed his Notice of Compliance on August 27, 2025.  (Doc. Nos. 6, 6-1.)  In the Notice of Compliance, Plaintiff identified the policy at issue and attached as Exhibits thereto the Policy Identification (Doc. No. 6-2), the Policy Declarations (Doc. No. 6-3), and the First Amended Complaint (Doc. No. 6-4.)  *See also* (Doc. No. 6.)  This Court issued an order indicating that it was satisfied with Plaintiff's response and directed the Clerk's Office to re-file the First Amended Complaint as a separate docket entry, which it did.  *See* Non-Doc. dated Aug. 28, 2025; (Doc. No. 7.)  In the First Amended Complaint, Plaintiff asserts claims for breach of contract (Count I), bad faith insurance handling (Count II), defamation (Count III), tortious interference with

---

[1] Plaintiff filed a second motion to proceed *in forma pauperis*, using this District's Application to Proceed Without Prepaying Fees or Costs (AO 239).  *See* (Doc. No. 3.)

[2] The Court found that Plaintiff's Complaint did not allege federal question jurisdiction, ordered Plaintiff to sufficiently allege the citizenship of Defendant to evaluate diversity jurisdiction, and directed Plaintiff to provide appropriate U.S. Marshal Forms (Form USM 285) and/or Summonses (AO 440) for service upon Defendant, which he later did.  *See* (Doc. No. 5 at PageID# 16); *see also* (Doc. Nos. 6, 6-1, 6-5, 6-6.)

insurance eligibility (Count IV), intentional infliction of emotional distress (Count V), and injunctive relief (Count VI).[3]

On August 28, 2025, this Court referred the case to the Magistrate Judge for general pretrial supervision.  (Doc. No. 8.)  On December 10, 2025, Defendant filed its Motion to Dismiss the Amended Complaint.  (Doc. No. 17).  On December 29, 2025, Plaintiff filed the Second Amended Complaint, which he incorrectly captioned the "First Amended Complaint."  (Doc. No. 18.)[4]  Later that day, Defendant filed its Motion to Strike the Second Amended Complaint.  (Doc. No. 19.) However, in each of Defendant's filings, it failed to represent whether it had served the motions upon Plaintiff as required under Rule 5 of the Federal Rules of Civil Procedure.  (Doc. Nos. 17, 19.) Therefore, the Magistrate Judge ordered Defendant "to provide the Court with a notice to confirm compliance with Rule 5(b) or properly serve with an amended pleading showing proper service of" the earlier filings.  *See* Non-Doc dated Jan. 2, 2026.  Accordingly, on January 2, 2026, Defendant filed its Amended Motion to Dismiss (Doc. No. 20) and Amended Motion to Strike (Doc. No. 21.) Aside from the fact that the later filings include a certificate of service, Defendant's Amended Motion to Strike (Doc. No. 21) and its Amended Motion to Dismiss (Doc. No. 20) are identical to Defendant's Motion to Dismiss the Amended Complaint (Doc. No. 17) and Motion to Strike the Second Amended Complaint (Doc. No. 19).  Thus, the Defendant's Motion to Dismiss the Amended Complaint (Doc. No. 17) and Motion to Strike the Second Amended Complaint (Doc. No. 19) are denied as moot.

On February 11, 2026, Plaintiff filed the Opposition and Motion for Leave to File Second

---

[3] In the First Amended Complaint, Plaintiff adds that he is seeking declaratory relief as a remedy.  (Doc. No. 7 at PageID# 36.)

[4] In the Second Amended Complaint, Plaintiff adds his request for declaratory relief to his claim for injunctive relief, thereby changing Count VI from a claim for "Injunctive Relief" to a claim for "Declaratory and Injunctive Relief."  (Doc. No. 18 at PageID# 84.)

Amended Complaint and on February 18, 2026, Defendant filed its Reply.  (Doc. Nos. 22, 23.)  Accordingly, the Motion is ripe for review.

### b.  Factual Allegations

The First Amended Complaint (Doc. No. 7) is the operative complaint here.  Plaintiff had amended his complaint once as a matter of course, so he would need to leave of court or the opposing party's consent to file a second amended complaint.  *See* Fed. R. Civ. Pro. 15(a).  But there is a small wrinkle.  In setting forth the facts, the Court considers the factual allegations in the First Amended Complaint as well as the Exhibits attached thereto.  (Doc. No. 7). *See Bassett v. National Collegiate Athletic Ass'n,* 528 F.3d 426, 430 (6th Cir. 2008) (noting that, in ruling on a Rule 12(b)(6) motion, a court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein."); s*ee also Brent v. Wayne County Dep't of Human Services*, 901 F.3d 656, 694 (6th Cir. 2018).  When Plaintiff filed his Notice of Compliance, he attached thereto two documents identifying the insurance policy.  (Doc. Nos. 6-2, 6-3.)  However, when the Clerk's Office docketed the First Amended Complaint, these attachments were not included as Exhibits to the First Amended Complaint.  *See* Non-Doc. dated Aug. 28, 2025; (Doc. No. 7.)  Thus, for the purposes of Defendant's motions, the Court will treat the Policy Identification and Policy Declarations as Exhibits attached to the First Amended Complaint.  Although the First Amended Complaint is the operative pleading, this Court will also consider the futility of Plaintiff's claims as pled in his proposed Second Amended Complaint (Doc. No. 18), and so this Court will also construe the Policy Identification and Policy Declarations as Exhibits attached to the proposed Second Amended Complaint.  (Doc. Nos. 6-2, 6-3.)

USAA issued a policy of insurance to Williams, number GAR 05498 81 52 90A, with effective dates of March 28, 2023 to March 28, 2024, for property located at 14524-26 Strathmore Avenue, East Cleveland, Ohio 44112 ("the Property"). (Doc. Nos. 6-2, 6-3.) "On August 24, 2023, [the Property] was damaged by severe storm flooding." (Doc. No. 7 at ¶ 1.) Within forty-eight (48) hours of the flood, Plaintiff submitted a claim to Defendant, and sometime after that, Defendant's adjuster "confirmed water damage and marked the flood line inside the home." (*Id*. at ¶ 2.) The adjuster "validated Plaintiff's HVAC repair estimate and initiated the claim." (*Id*. at ¶ 3.) Defendant issued a "partial payout of $996.90" to Plaintiff. (*Id*. at ¶ 3.)

Then, "Plaintiff submitted additional contractor estimates for storm-related damage not included in the initial inspection." (*Id*. at ¶ 4.) Defendant "responded by placing Plaintiff under investigation and reversing its approval [sic] without conducting a new inspection or presenting new evidence." (*Id*. at ¶ 5.) Defendant's fraud investigator, John Dingler, "claimed the home was abandoned and cited photos allegedly showing vacancy from the prior year." (*Id*. at ¶ 6.) Plaintiff challenged this finding and discovered that Dingler's description of the property matched that of Plaintiff's neighbor's house. (*Id*. at ¶ 7.) In the proposed Second Amended Complaint, Plaintiff adds that "Defendant communicated this fraud determination internally and to underwriting and insurance-related systems." (Doc. No. 18 at ¶ 26.) "Plaintiff provided photographic proof of interior occupancy dating back to 2022, including utilities, furniture, and tenant use." (Doc. No. 7 at ¶ 8.) Defendant then "issued a new denial based on 'misrepresentation,' contradicting its own earlier communications and payment confirmations." (*Id*. at ¶ 9.) Later, Defendant "refused to renew Plaintiff's auto coverage under the same insurance profile." (*Id*. at ¶ 10.) "Plaintiff filed a regulatory complaint with the Ohio Department of Insurance. The department reviewed the claim and told Plaintiff to sue

[Defendant]."  (*Id*. at ¶ 11.)

## II.     Standard of Review

### a.  Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting in part *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).  For purposes of Rule 12(b)(6), "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal citation and quotation marks omitted).

The measure of a Rule 12(b)(6) challenge — whether the Complaint raises a right to relief above the speculative level — "does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. National Collegiate Athletic Ass'n.*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting in part *Twombly,* 550 U.S. at 555–56). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in

conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (quoting in part *Erickson v. Pardus*, 551 U.S. 89 (2007)). Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

### b. Motion for Leave to Amend

Rule 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, if amending the complaint is 'futile,' the court need not grant a motion to amend. *See Beydoun v. Sessions*, 871 F.3d 459, 469 (6th Cir. 2017) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "An amendment is futile when, after including the proposed changes, the complaint still 'could not withstand a Rule 12(b)(6) motion to dismiss.'" *Skatemore, Inc. v. Whitmer*, 40 F.4th 727, 737 (6th Cir. 2022) (quoting *Rose v. Harford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000)).

### III.    Analysis

As a preliminary matter, here, Plaintiff is proceeding *pro se*. Although *pro se* complaints are construed liberally and held to less stringent standards than formal pleadings drafted by lawyers, *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011), "the lenient treatment generally accorded to *pro se* litigants has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). Even *pro se*

plaintiffs must still meet basic pleading requirements, and courts are not obligated to conjure allegations or construct claims on their behalf.  *See Bassett v. Nat'l Collegiate Ath. Ass'n*, 528 F.3d 426, 437 (6th Cir. 2008); *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) (liberal construction for *pro se* litigants does not "abrogate basic pleading requirements").

For the reasons set forth below, this Court grants in part and denies in part the Amended Motion to Dismiss (Doc. No. 20.)

### a.  Amended Motion to Dismiss

In the Amended Motion to Dismiss, Defendant argues that the First Amended Complaint should be dismissed for several reasons.  First, it argues that Plaintiff's breach of contract claim fails because he (1) failed to attach a copy of the policy at issue and (2) failed to point to a specific provision that Defendant allegedly breached.  (Doc. No. 20 at PageID# 96.)  Second, it argues that Plaintiff's bad faith insurance handling claim fails because even accepting the facts alleged in the First Amended Complaint as true, Defendant's handling of Plaintiff's insurance claim was justified. (*Id*. at PageID# 98) (citing *Eddy v. Farmers Prop. Cas. Ins. Co*., 239 N.E.3d 1000 (Ohio App. 1st Dist. 2024), *appeal allowed*, 241 N.E.3d 213 (Ohio 2024), and *rev'd*, 2026-Ohio-626 (Ohio Feb. 26, 2026).  Third, Defendant asserts that Plaintiff's defamation claim fails because Plaintiff has not shown that Defendant made or published a false statement.  (*Id*. at PageID# 100.)

Fourth, Defendant contends that tortious inference with insurance eligibility is not a valid cause of action, and Plaintiff instead should have pled tortious interference with a contract claim.  (*Id*. at PageID# 101.)  Even if he had plead tortious inference with a contract, Defendant maintains that this claim "fails because [Plaintiff] does not allege facts showing the existence of a specific contract or business relationship with a third party, Defendant's knowledge of that relationship, purposeful

and improper interference by Defendant, or resulting damages, all of which are required elements." (*Id*.)  Fifth, Defendant argues that Plaintiff's intentional infliction of emotional distress claim fails because Plaintiff does not allege conduct so extreme and outrageous.  (*Id*. at PageID# 103.)  Sixth, Defendant argues that Plaintiff cannot assert standalone claims for declaratory or injunctive relief. (*Id*. at PageID# 104.)  As noted above, Plaintiff did not file a brief in opposition to the Amended Motion to Dismiss and instead (improperly) filed the proposed Second Amended Complaint (Doc. No. 18) to remedy some of the concerns raised therein.

This Court will address Defendant's arguments in turn.

### i.  Count I: Breach of Contract

Defendant argues that Plaintiff's breach of contract claim fails because he (1) failed to attach a copy of the policy at issue and (2) failed to point to a specific provision that Defendant allegedly breached.  (Doc. No. 20 at PageID# 96.)  *Id*. (quoting *GE Elec. Co. v. S & S Sales Co.*, 2011 WL 4369045, at *2 (N.D. Ohio Sept. 19, 2011)).  The Court disagrees.  First, the Federal Rules of Civil Procedure do not require Plaintiff to attach a copy of the contract to his pleadings.  Plaintiffs generally are "not required to attach to the complaint documents upon which his action is based[.]" *Sollenberger v. Sollenberger*, 173 F. Supp. 3d 608, 618 (S.D. Ohio 2016); *Bihn v. Fifth Third Mortg. Co.*, 980 F. Supp. 2d 892, 898 (S.D. Ohio 2013) (same); *Composite Techs., L.L.C. v. Inoplast Composites SA DE CV*, 925 F. Supp. 2d 868, 873 (S.D. Ohio 2013) (same).  That is because Fed. R. Civ. P. 10(c), which provides that a "copy of any written instrument that is an exhibit to a pleading is a part of the pleading for all purposes" is "permissive, and a plaintiff is under no obligation to attach to his complaint documents upon which is action is based."  *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (citing 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* §

1327 (2d ed. 1990)).  Moreover, although Plaintiff did not attach a copy of the policy, he did file as Document Nos. 6-2 and 6-3 copies of the Policy Identification and Policy Declarations Page.

Second, and more importantly, Plaintiff alleges that Defendant issued a partial payment of 996.90 to him under the terms of the policy.  (Doc. No. 7 at ¶ 3.)  To state a claim for relief, specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (quoting in part *Erickson v. Pardus*, 551 U.S. 89 (2007)).  This allegation of Defendant's payment to Plaintiff under the policy does just that.

Accordingly, this Court denies the Amended Motion to Dismiss as to Count I.

### ii.  Count II: Bad Faith Insurance Handling

Defendant argues that Plaintiff's bad faith insurance handling claim fails because even accepting the facts alleged in the First Amended Complaint as true, Defendant's handling of Plaintiff's insurance claim was justified.  (Doc. No. 20 at PageID# 98.)  It contends that even if it acted in error, that error does not result in a finding of bad faith so long as it was "predicated upon circumstances that furnish reasonable justification."  (*Id*.) (citing *Eddy v. Farmers Prop. Cas. Ins. Co*., 239 N.E.3d 1000 (Ohio App. 1st Dist. 2024), *appeal allowed*, 241 N.E.3d 213 (Ohio 2024), and *rev'd,* 2026-Ohio-626 (Ohio Feb. 26, 2026).  This Court disagrees with Defendant for the reasons set forth below.

"Based upon the relationship between an insurer and its insured, an insurer has the duty to act in good faith in the handling and payment of the claims of its insured."  *Hoskins v. Aetna Life Ins. Co*., 452 N.E.2d 1315, syllabus paragraph one (Ohio 1983).  *See also Scott Fetzer Co. v. American Home Assurance Co. Inc*., 229 N.E.3d 70, 76 (Ohio 2023).  "[A]n insurer fails to exercise good faith

10

in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor."[5]  *Zoppo v. Homestead Ins. Co.*, 644 N.E.2d 397, 399–400 (Ohio 1994).

Under Ohio law, an insurer lacks reasonable justification for its denial when its refusal to pay is predicated on an arbitrary and capricious belief that the insured is not entitled to coverage.  *See Hoskins*, 452 N.E. 2d at 1320.  Arbitrary and capricious decisions are those "made without consideration of or regard for facts, circumstances, fixed rules, or procedures." *Marshall v. Colonial Ins. Co.*, 2016 WL 7290968, at * 8 (Ohio App. 7th Dist. Dec. 9, 2016).  *See also Korwin v. State Farm Fire & Casualty Co.*, 2024 WL 3638655, at * 5 (N.D. Ohio Aug. 2, 2024) (same).  An insurer may be reasonably justified in denying a claim when "the claim was fairly debatable and the refusal was premised on either the status of the law at the time of the denial or the facts that gave rise to the claim."  *Big Lots Stores, Inc. v. Am. Guarantee & Liab. Ins. Co.*, 240 F.Supp.3d 725, 739 (S.D. Ohio 2017) (quoting *Tokles & Son, Inc. v. Midwestern Indemn. Co.*, 605 N.E.2d 936, 943 (Ohio 1992)).  *See also Superior Credit Union, Inc. v. CUMIS Ins. Soc'y, Inc.*, 2019 WL 5557343, at *5 (S.D. Ohio Oct. 28, 2019), *adopted by* 2019 WL 6131267, (S.D. Ohio Nov. 19, 2019).

"[P]erforming a cursory investigation and ignoring information that would tend to support the insured's claim can constitute bad faith." *Great W. Cas. Co. v. Flandrich*, 605 F.Supp.2d 955, 980 (S.D. Ohio 2009) (citing *Zoppo*, 644 N.E.2d at 400).  The insurer "cannot merely conduct a cursory investigation and fail to interview key witnesses and look into key facts in order to prevent uncovering

---

[5] Intent is not an element of a bad faith tort. *Yates v. Allstate Ins. Co.*, 2012 WL 1902464 at *3 (S.D. Ohio May 25, 2012) (quoting *Zoppo v. Homestead Ins. Co.,* 644 N.E.2d 397 (Ohio 1994). *See also Superior Credit Union, Inc. v. CUMIS Ins. Soc'y, Inc.*, 2019 WL 5557343 at *5 (S.D. Ohio Oct. 28, 2019), *adopted by* 2019 WL 6131267 (S.D. Ohio Nov. 19, 2019). Rather, the applicable "standard for determining bad faith is simply 'reasonable justification'[.]" *Yates*, 2012 WL 1902464 at *3 (quoting *Zoppo*, 644 N.E.2d 397).

11

evidence that would support coverage." *Great West*, 605 F. Supp. 2d at 981. A bad faith claim may be stated where the plaintiff alleges that the insurer "acted in bad faith by failing to investigate his claim, failing to apply provisions of [the] policy, and failing to interpret the policy in [the insured's] favor." *Superior Credit Union, Inc.*, 2019 WL 5557343 at *5 (quoting *Poneris v. Pennsylvania Life Ins. Co.*, 2007 WL 3047232, at *3 (S.D. Ohio Oct. 18, 2007)). Even if a claim is ultimately paid, an insurer's "'foot-dragging' in handling and evaluating the claim may support a bad-faith cause of action." *McNair v. State Farm Fire & Cas. Co.*, 2013 WL 6795616, at *5 (Ohio App. 6th Dist. Dec. 20, 2013) (quoting *Drouard v. United Servs. Auto. Assn.*, 2007 WL 707532, at *2 (Ohio App. 6th Dist. March 9, 2007)).

To begin, the cases cited by Defendant in support fail to support its argument that denial of Plaintiff's insurance claim was justified. First, Defendant references *Eddy v. Farmers Property Casualty Insurance Company* to support this contention. (Doc. No. 20 at PageID# 98) (citing 239 N.E.3d 1000, 1007). There, the state appellate court affirmed the trial court's grant of plaintiff's motion to compel discovery, finding that the defendant-insurer's argument that attorney-client privilege protected documents that related to and were created prior to the denial of plaintiff's bad faith insurance failed. 239 N.E.3d 1000, 1007. The Ohio Supreme Court recently reversed this decision, holding that an *in camera* inspection was needed to determine whether the allegedly protected materials were privileged. 2026-Ohio-626 (Ohio Feb. 26, 2026). Even so, this case fails to add support for Defendant's contention that its denial of Plaintiff's claim was justified.

In the Amended Motion to Dismiss, Defendant also cites to the state appellate court's decision in *CyrusOne, LLC v. Great American Insurance Company*, 174 N.E.3d 41 (Ohio App. 1st Dist. 2021). (Doc. No. 20 at PageID#s 97-98.) There, the state appellate court affirmed the trial court's granting

12

of summary judgment in favor of the insurer on plaintiff's bad faith claim.  *CyrusOne*, 174 N.E.3d 41, 53.  The court concluded that the parties disagreed as to what was covered under the policy and that the defendant had given plaintiff numerous extensions of time to provide the necessary proof. *Id*.  These facts bear little resemblance to those presented to this Court.

Here, Plaintiff alleges that once he submitted "additional contractor estimates for storm-related damage not included in the initial inspection," Defendant placed Plaintiff under a fraud investigation and reversed its initial approval of his claim.  (Doc. No. 7 at ¶¶ 4-5.)  When Plaintiff challenged this determination, Dingler, Defendant's fraud investigator, reported that the Property was abandoned.  (*Id*. at ¶ 6.)  After Plaintiff offered proof of occupancy, Defendant then issued a new denial of Plaintiff's claim, citing "misrepresentation."  (*Id*. at ¶¶ 7-9.)  In addition, Plaintiff alleges that Defendant later refused to renew his auto coverage policy.  (*Id*. at ¶ 10.)  Accordingly, Defendant fails to offer cases that are factually and legally analogous to the one before this Court.

Defendant's primary support is its contention that even if all of Plaintiff's allegations are accepted as true, Defendant's denial of Plaintiff's insurance claim was justified.  (Doc. No. 20 at PageID#s 97-98.)  Defendant asserts that:

> Plaintiff's own allegations show that [Defendant] promptly dispatched an adjuster from out of state, inspected the property, confirmed water damage, marked the flood line, validated an HVAC estimate, and issued a partial payment. [Defendant] then placed the claim under investigation after receiving additional, expanded contractor estimates and, during that process, relied on photographs that suggested the property was vacant and ultimately denied further coverage on misrepresentation grounds.  That sequence of inspection, partial payment, additional estimates, investigation, and reliance on perceived vacancy evidence is the paradigm of a disputed claim handled through investigation, not the sort of "arbitrary or capricious" conduct Ohio courts condemn as bad faith.

(*Id*.) (citation omitted).

This Court disagrees with Defendant.  Accepting all of Plaintiff's factual allegations as true,

13

the Court finds that Plaintiff has plausibly stated a claim for bad faith insurance handling.  Plaintiff alleges that once it submitted additional estimates, Defendant opened a fraud investigation against him, reversed its initial approval and denied his subsequent request for damages.  *See* (Doc. No. 7 at ¶¶ 4-6.)  To support the denial, Defendant claimed that the Property was abandoned.  *See* (*id*. at ¶ 6.)  Yet that determination occurred *after* one of Defendant's adjusters visited the Property, inspected the damage, and issued a partial payment.  *See* (*id*. at ¶¶ 1-3.)  Furthermore, Plaintiff alleged that after he demonstrated proof of occupancy, his claim was denied on a new basis.  *See* (*id*. at ¶¶ 8-9.)

Accordingly, this Court finds that Plaintiff has sufficiently alleged a claim for bad faith, and thus this Court denies the Amended Motion to Dismiss as to Count II.

### iii.  Count III: Defamation

Defendant asserts that Plaintiff's defamation claim fails because Plaintiff has not shown that Defendant made or published a false statement.  (Doc. No. 20 at PageID# 100.)  In Ohio, defamation occurs "when a publication contains a false statement 'made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business or profession.'" *Am. Chem. Soc. v. Leadscope, Inc.*, 978 N.E.2d 832, 852 (Ohio 2012) (quoting *Jackson v. City of Columbus*, 883 N.E.2d 1060, 1064 (Ohio 2008)).  Generally, to establish a prima facie claim for defamation, a plaintiff "must show (1) that a false statement of fact was made, (2) that the statement was defamatory, (3) that the statement was published, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with the requisite degree of fault in publishing the statement." *Pincus v. Pincus*, 127 N.E.3d 393, 397 (Ohio App. 8th Dist. 2018) (citing *Am. Chem.*

14

*Soc.*, 978 N.E.2d 832) (quotation marks omitted).[6]  Unlike mistake or fraud, "defamation is not subject to the heightened pleading requirements of Federal Rule [ ] 9(b)."  *Suarez Corp. v. CBS, Inc.*, 1994 WL 142785, at *5, 23 F.3d 408 (6th Cir. Apr. 19, 1994) (applying Rule 8(a) to defamation claim); *Casale v. Nationwide Child. Hosp.*, 2012 WL 13024407, at *5 (S.D. Ohio Aug. 2, 2012); *Bolton v. Delta Air Lines*, 182 F. Supp. 3d 768, 772 (S.D. Ohio 2016).  *See also* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").

### 1.  False Statement

First, Defendant argues that Plaintiff does not allege the existence of a false statement.  (Doc. No. 20 at PageID# 100.)  In a defamation action, a plaintiff must allege a false statement, an essential element of a prima facie claim. *See Hartman v. Kerch*, 217 N.E.3d 881, 896 (Ohio App. 8th Dist. 2023).  A "false statement" is one that "sets forth matters which are not true," or "[s]tatements without grounds in truth or fact."  *Serv. Emp. Int'l Union Dist. 1199 v. Ohio Elections Comm.*, 822 N.E.2d 424, 430 (Ohio App. 8th Dist. 2004) (citation omitted) (alteration in original); *Labban v. Mahon*, 2021 WL 6777029, at *2 (6th Cir. Sept. 23, 2021) (citing *Susan B. Anthony List v. Driehaus*, 779 F.3d 628, 632 (6th Cir. 2015)).  A statement, therefore, is not a "false statement" if, "even though it is misleading and fails to disclose all relevant facts, the statement has some truth in it."  *Horenstein, Nicholson & Blumenthal, L.P.A. v. Hilgeman*, 178 N.E.3d 71, 106 (Ohio App. 2d Dist. 2021).

While a defamation complaint "must allege the substance of the allegedly defamatory

---

[6] Defamation can take the form of either slander or libel.  *Tharp v. Hillcrest Baptist Ch. of Columbus*, 204 N.E.3d 709, 723 (Ohio App. 10th Dist. 2022) (citation omitted).  "Slander" refers to "spoken defamatory words," while "libel" refers to "written or printed defamatory words." *Id.* (citing *Savoy v. Univ. of Akron*, 15 N.E.3d 430 (Ohio App. 10th Dist. 2014)) (quotation marks omitted); *Burns v. Rice*, 157 Ohio App.3d 620, 813 N.E.2d 25, 32 (Ohio App. 10th Dist. 2004).  The prima facie elements are identical between the two forms of defamation.  *Tharp*, 204 N.E.3d at 723; *Mitchell v. Fujitec Am., Inc.*, 518 F. Supp. 3d 1073, 1090 (S.D. Ohio 2021) (citation omitted.)  In this case, Plaintiff has not specified the form of the allegedly defamatory statements.

statements," "they need not be set out verbatim."  *Doe v. Univ. of Dayton*, 2018 WL 1393894, at *5 (S.D. Ohio Mar. 20, 2018) (citing *Hedrick v. Ctr. for Comprehensive Alcoholism Treatment*, 454 N.E.2d 1343 (Ohio 1982)).  Thus, a plaintiff at the Rule 12(b)(6) stage need only allege that a defamatory statement was false to survive dismissal.  *See Swartz v. DiCarlo*, 2014 WL 8097138, at *3 (N.D. Ohio Oct. 21, 2014), *report and recommendation adopted sub nom. Swartz v. Di Carlo*, 2015 WL 1022073 (N.D. Ohio Mar. 6, 2015) (finding sufficient allegations that defendant's statements were "false" and "not true"); *Prior v. Mukasey*, 2008 WL 5076821, at *2 (N.D. Ohio Nov. 21, 2008) (dismissing defamation claim because plaintiff only alleged that statements were "[u]nflattering" and "embarrassing...but not false"); *Baez v. City of Cleveland*, 2020 WL 5982301, at *5 (N.D. Ohio Oct. 8, 2020) (finding defamation claim insufficiently pleaded where plaintiff did "not allege that the [statement] was false").

The Court concludes that Plaintiff has sufficiently alleged a false statement, specifically that Dingler's declaration that the Property "was abandoned."  (Doc. No. 7 at ¶ 6.)  At this stage of the proceedings, the Court must accept all of Plaintiff's allegations as true, and as other Ohio federal courts have found, allegations that a statement was "false" and "untrue" are sufficient for the purpose of evaluating a defamation claim under Rule 12(b)(6).  *See Swartz v. Di Carlo*, 2014 WL 8097138, at *2–3 (N.D. Ohio Mar. 6, 2015) (finding sufficient allegations that statements were simply "not true" and "false"); *Mitchell v. Fujitec Am., Inc.*, 518 F. Supp. 3d 1073, 1093–94 (S.D. Ohio 2021) (holding as sufficient allegations that defendant's statement that plaintiff sexually harassed her was "false and defamatory," "unfounded," a "false charge," and a "false allegation").  The Court finds that Plaintiff's allegations likewise suffice.

### 2.  Publication

Second, Defendant contends that Plaintiff has not alleged that it published an allegedly defamatory statement.  (Doc. No. 20 at PageID# 100.)  As the Supreme Court of Ohio has explained:

> The publication of defamatory matter is an essential element to liability for defamation. "Publication of defamatory matter is its communication intentionally or by a negligent act to one other than the person defamed." 3 Restatement of the Law 2d, Torts (1965), Section 577(1)). *Any* act by which the defamatory matter is communicated to a third party constitutes publication. *Id.* at Comment *a*. Also, it is sufficient that the defamatory matter is communicated to one person only, even though that person is enjoined to secrecy. See *id.* at Comment *b*.

*Hecht v. Levin*, 613 N.E.2d 585, 587 (Ohio 1993) (emphasis in original).  The *Hecht* court further observed that "publication of defamation consists in communicating it to a person or persons other than the person libeled." *Id.* (citing *Hahn v. Kotten*, 331 N.E.2d 713, 718 (Ohio 1975)).  Thus, "publication" is a "word of art" that "includes any communication by the defendant to a third person." *Welling v. Weinfeld*, 866 N.E.2d 1051, 1057 (Ohio 2007) (citing Restatement of the Law 2d, Torts, § 652D, Comment *a*) (quotation marks omitted); *Lawson v. AK Steel Corp.*, 699 N.E.2d 951, 955 (Ohio App. 12th Dist. 1997).

"[D]efamation primarily protects only the interest in reputation." *Missionaries of the Sacred Heart, Inc. v. Ohio Dep't of Youth Servs.*, 2020 WL 7232092, at *4 (Ohio App. 10th Dist. Dec. 8, 2020) (citing 3 Restatement of the Law 2d, Torts, § 577(1)) (quotation marks omitted).  Therefore, "unless the defamatory matter is communicated to a third person there has been no loss of reputation," and "[i]t is enough that it is communicated to a single individual other than the one defamed." *Id.*; *see also Hecht*, 613 N.E.2d at 587 ("[P]ublication does not take on its more common connotation of wide dissemination.").

In the First Amended Complaint, Plaintiff does not allege that Dingler relayed this statement

to any of Defendant's employees, and the First Amended Complaint provides no indication that the statement that the Property was abandoned was communicated to a third party.  Thus, Plaintiff fails to adequately state a claim for defamation in the First Amended Complaint.

However, in the proposed Second Amended Complaint, Plaintiff adds that "Defendant communicated this fraud determination internally and to underwriting and insurance-related systems."  (Doc. No. 18 at ¶ 26.)  Because "defamation is not subject to the heightened pleading requirements of Federal Rule [ ] 9(b)," Plaintiff need not specify the members of Defendant's staff to whom Dingler might have communicated his statement.  *Suarez Corp. v. CBS, Inc.*, 23 F.3d 408 (Table), 1994 WL 142785, at *5 (6th Cir. Apr. 19, 1994).  *see Yacko v. Gen. Motors Co.*, 2024 WL 866321 (N.D. Ohio Feb. 28, 2024) (sufficient allegation of statement to third party where defendant's employee communicated statement to its management); *QFS Transp., LLC v. Infinity Transp. Servs., Inc.*, 2019 WL 2396261, at *3 (S.D. Ohio June 6, 2019) (sufficient allegation that "the third parties to whom QFS made the alleged statements" were "*Defendants' owner-operators and drivers*").  The Court construes Plaintiff's allegations that USAA "accused Plaintiff of fraud, denied further claim payments, [] demanded reimbursement of previously paid funds" and canceled the policy by claiming that Plaintiff misrepresented the condition of the Property to mean that Dingler must have communicated statements to others within the company.  (Doc. No. 18 at ¶¶ 16-17.)  Accordingly, Plaintiff has sufficiently alleged a claim for defamation in the proposed Second Amended Complaint.

Thus, this Court denies the Amended Motion to Dismiss as to Count III.

### iv.  Count IV: Tortious Interference with Insurance Eligibility

To the extent Plaintiff attempts to plead a claim for tortious inference with a contract, Defendant contends that Plaintiff's claim "fails because he does not allege facts showing the existence

of a specific contract or business relationship with a third party, Defendant's knowledge of that relationship, purposeful and improper interference by Defendant, or resulting damages, all of which are required elements."[7]  (Doc. No. 20 at PageID# 101.)  Ohio law recognizes claims for both tortious interference with a contract, and tortious interference with business relationships.  *Georgia-Pacific Consumer Prods LP v. Four-U-Packaging, Inc*., 701 F.3d 1093, 1102 (6th Cir. 2012).  The elements for both torts "are almost identical, the main distinction being 'that interference with a business relationship includes intentional interference with prospective contractual relations, not yet reduced to a contract.'"  *Id*. (quoting *Miami Valley Mobile Health Servs., Inc. v. ExamOne Worldwide, Inc*., 852 F. Supp. 2d 925, 942 (S.D. Ohio 2012)).

In titling his claim "Tortious Interference with Insurance Eligibility,"[8] this Court is unsure of the precise nature of Plaintiff's tortious interference claim.  (Doc. No. 7 at PageID# 36.)  After a careful review of the Complaint, the Court construes Count IV as a claim for tortious interference with a contract, specifically Defendant's tortious interference with the insurance agreement.  To bring a claim for tortious interference with a contract under Ohio law, one must allege "(1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) the lack of justification, and (5) resulting damages."  *Miami Valley Mobile Health Servs*., 852 F. Supp. 2d at 942 (quoting *Kenty v. Transamerica Premium Ins. Co*., 650 N.E.2d 863, 866 (Ohio 1995)) (internal quotation marks omitted).

A plaintiff cannot allege that Defendant tortuously interfered with its own contract.  *See, e.g*.,

---

[7] Finding that Count IV fails because Plaintiff fails to allege the existence of a contract with a third party, the Court declines to address Defendant's other arguments.

[8] In the proposed Second Amended Complaint, Plaintiff renames this cause of action "tortious interference with prospective economic advantage," which fares no better.  (Doc. No. 18 at PageID# 83) (alterations as in original).

*Contadino v. Tilow*, 589 N.E.2d 48, 52 (Ohio App. 1st Dist. 1990) ("[A] party cannot be sued in tort for interfering with its own performance."); *Scaccia v. Lyft, Inc.*, 2021 WL 4355521, at \*3 (S.D. Ohio Sept. 24, 2021) ("Certainly, Plaintiff cannot allege that Lyft's interference with its own contract with him was tortious interference."); *715 Spencer Corp. v. City Env't Servs., Inc.*, 80 F. Supp. 2d 755, 763 (N.D. Ohio 1999) ("Since a party cannot tortiously interfere with its own contract, USA Waste cannot be liable for this tort."); *McNeil v. Medcentral Health Sys.*, 2009 WL 1994748, at \*5 (Ohio App. 5th Dist. July 7, 2009) ("However, as a party to the contract, MedCentral could not have tortuously interfered with its own contract, as an element of the claim is interference with the contract of a third party.").

This Court agrees with Defendant that Plaintiff has failed to allege the existence of a contract with a third party. (Doc. No. 20 at PageID# 20 at PageID# 101.) Stated more succinctly, Defendant cannot tortiously interfere with its own contract. To the extent Plaintiff attempts to state a claim for tortious interference with business relationships, this same principle would apply. *See Kuvedina, LLC v. Cognizant Tech. Sols.*, 946 F. Supp. 2d 749, 757 (S.D. Ohio 2013) ("[A] claim for tortious interference of business relationships can only be asserted against 'outsiders' or 'strangers to the business relationship.'").

Accordingly, and for all the reasons set forth above, the Court finds that Plaintiff has failed to allege a claim for tortious inference with a contract. The Court therefore grants the Amended Motion to Dismiss as to Count IV.

### v. Count V: Intentional Infliction of Emotional Distress

Defendant argues that Plaintiff's intentional infliction of emotional distress claim fails because Plaintiff does not allege conduct that would satisfy the extreme and outrageous prong of this

20

tort.  (Doc. No. 20 at PageID# 103.)

To avoid dismissal of a claim for intentional infliction of emotion distress under Ohio law, a plaintiff must sufficiently allege that: (1) the defendant intended to cause the plaintiff emotional distress or knew or should have known that his actions would result in emotional distress; (2) the defendant's "conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community;" (3) the defendant's actions were the proximate cause of the plaintiff's injury; and (4) the plaintiff's "mental anguish ... is serious and of a nature that no reasonable [person] could be expected to endure it." *Hayward v. Cleveland Clinic Found*., 759 F.3d 601, 619 (6th Cir. 2014) (quoting *Pyle v. Pyle*, 463 N.E.2d 98, 103 (Ohio Ct. App. 1983)).  S*ee also Ritter v. Bd. Edu. Arcadia Local Schs*., 535 F.Supp.3d 690, 697 (N.D. Ohio 2021) (quoting *Talley v. Family Dollar Stores Ohio, Inc*., 542 F.3d 1099, 1100 (6th Cir. 2008)); *Mitchell v. Fujitec America, Inc.*, 518 F.Supp.3d 1073, 1102-1103 (S.D. Ohio 2021).

The Ohio Supreme Court has elaborated upon what constitutes "extreme and outrageous conduct" sufficient to support a claim of intentional infliction of emotional distress, as follows:

> "* * * It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.  Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'

> "The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.  The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind.  There is no occasion for the law to intervene in every case where some one's feelings are hurt.  There must still

21

> be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam."

*Yeager v. Local Union 20*, 453 N.E.2d 666, 671-72 (Ohio 1983) *abrogated on other grounds by Welling v. Weinfeld*, 866 N.E.2d 1051 (Ohio 2007) (citing Restatement of the Law 2d, Torts (1965) 71, Section 46(1)). *See also Hayward*, 759 F.3d at 619 (citing same passage); *Wilson v. Columbus Bd. Educ*., 589 F.Supp.2d 952, 971 (S.D. Ohio 2008) (same).

As the Sixth Circuit has noted, "[t]o say that Ohio courts narrowly define 'extreme and outrageous conduct' would be something of an understatement." *Hayward*, 759 F.3d at 619 (quoting *Baab v. AMR Servs. Corp*., 811 F. Supp. 1246, 1269 (N.D. Ohio 1993)). *See also Godfredson v. Hess & Clark, Inc*., 173 F.3d 365, 376 (6th Cir. 1999); *Culler v. Exal Corp*., 193 F.Supp.3d 850, 851-852 (N.D. Ohio 2016); *Rogers v. Horwitz*, 2023 WL 6383796, at *16-18 (N.D. Ohio Sept. 29, 2023); *Harris v. Pentair Flow Technologies LLC*, 2020 WL 2558028 at *6 (N.D. Ohio May 20, 2020); *Stewart v. Suarez Corp. Indus*., 2015 WL 8272951, at *2 (N.D. Ohio Dec. 8, 2015). "The issue of whether conduct rises to the level of 'extreme and outrageous' is a question of law." *Burks v. Dayton Pub. Schs. Bd. of Edu.,* 212 N.E.3d 1197, 1214 (Ohio App. 2nd Dist. 2023) (quoting *Spitulski v. Bd. of Edu. of the Toledo City School Dist*., 121 N.E.3d 41, 57 (Ohio App. 6th Dist. 2018)). "A trial court may dismiss a claim for intentional infliction of emotional distress [at the pleading stage] where the alleged conduct does not, as a matter of law, reach the level of 'extreme and outrageous' conduct." *Morrow v. Reminger & Reminger Co., LPA*, 915 N.E.2d 696, 714 (Ohio App. 12th Dist. 2009) (collecting cases). *See also 180 Indus. LLC v. Brunner Law Firm Co. LPA*, 2021 WL 4955268, at * 3 (6th Cir. July 13, 2021).

For the following reasons, the Court finds that Plaintiff has not sufficiently alleged that Defendant's conduct was "extreme and outrageous and beyond all possible bounds of possible

decency." Accepting the allegations in the First Amended Complaint as true, Plaintiff has alleged that Defendant's denial of his insurance claim was made in error. Indeed, construed in his favor, Plaintiff alleges that Defendant issued the reversal and subsequent denials of Plaintiff's claim in bad faith. Even so, the Court finds that Defendant's alleged conduct does not amount to intentional infliction of emotional distress under Ohio law. *See, e.g., Clark v. Grange Ins.*, 2025 WL 2604703 (Ohio App. 10th Dist. Sept. 9, 2025) (finding that a third-party plaintiff's allegations that insurance carrier offered a settlement and then blocked her access to the payment portal, thereby preventing her from receiving compensation, were not extreme and outrageous). In the proposed Second Amended Complaint, Plaintiff alleges that "Defendant's conduct—including false fraud accusations, cancellation threats, payment reversals, and prolonged delay—was extreme and outrageous." (Doc. No. 18 at ¶ 30.) Although Plaintiff adds allegations of "cancellation threats" and "prolonged delay, this conduct, coupled with Defendant's alleged bad faith denial of Plaintiff's insurance claim, is not extreme and outrageous.

Accordingly, and for all the reasons set forth above, the Court finds that Plaintiff has failed to allege sufficiently extreme and outrageous conduct required to state a claim for intentional infliction of emotional distress as a matter of law. The Court therefore dismisses Count V.

### vi. Count VI: Declaratory and Injunctive Relief

In the Second Amended Complaint, Plaintiff adds a request for declaratory relief to his claim for injunctive relief, thereby changing Count VI from a claim for "Injunctive Relief" to a claim for "Declaratory and Injunctive Relief." (Doc. No. 18 at PageID# 84.) Defendant argues that Plaintiff cannot assert a standalone claim for declaratory and injunctive relief. (Doc. No. 20 at PageID# 104.)

### 1. Declaratory Judgment

Under Article III of the United States Constitution, federal courts may exercise jurisdiction only if the parties have presented a live case or controversy. U.S. Const. Art. III, § 2. *See Commodities Export Co. v. Detroit Intern. Bridge Co.*, 695 F.3d 518, 525 (6th Cir. 2012). As the Sixth Circuit has explained, "[w]e have no power to offer an advisory opinion, based on hypothetical facts." *Commodities Export Co*, 695 F.3d at 525 (citing *Fialka–Feldman v. Oakland Univ. Bd. of Trustees*, 639 F.3d 711, 715 (6th Cir. 2011)). Where a party seeks declaratory relief, "[t]he difference between an abstract question and a 'controversy'...is necessarily one of degree." *Golden v. Zwickler*, 394 U.S. 103, 108 (1969) (internal quotation marks omitted). Thus, when faced with the "difficult task of distinguishing between actual controversies and attempts to obtain advisory opinions on the basis of hypothetical controversies," *Coal. for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 458 (6th Cir. 2004) (internal quotation marks omitted), courts consider "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Golden*, 394 U.S. at 108 (internal quotation marks omitted). *See also MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127 (2007) (in determining whether a declaratory judgment action satisfies the case or controversy requirement, the question is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."); *Commodities Export Co.*, 695 F.3d at 525.

This does not end the inquiry, however. Once the Court determines justiciability, it must next consider whether it should exercise jurisdiction over a parties' request for declaratory relief. As the Supreme Court has explained, federal courts are not obligated to exercise subject matter jurisdiction

in declaratory judgment actions. *See Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491, 494 (1942) ("[a]though the District Court had jurisdiction of the suit under the Federal Declaratory Judgments Act...it was under no compulsion to exercise that jurisdiction"). Rather, the Sixth Circuit considers five factors (the "*Grand Trunk* factors") to determine whether the exercise of Declaratory Judgment Act[9] jurisdiction is appropriate:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984) (citations omitted). *See also United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 396 (6th Cir. 2019).

Although the above formulation indicates the court should balance the five factors, the Sixth Circuit has never indicated the relative weights of the factors. *See United Specialty Ins. Co.*, 936 F.3d at 396. Instead, "[t]he relative weight of the underlying considerations of efficiency, fairness, and federalism will depend on facts of the case." *W. World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014). The Sixth Circuit has noted, in weighing these factors, "[d]istrict courts must be afforded substantial discretion to exercise jurisdiction 'in the first instance, because facts bearing on the usefulness of the declaratory judgment remedy, and [the] fitness of the case for resolution, are

---

[9] The Declaratory Judgment Act provides, with certain exclusions not applicable here, that: "In a case of actual controversy within its jurisdiction..., any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201(a).

peculiarly within their grasp.'" *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008) (quoting *Wilton v. Seven Falls Co.,* 515 U.S. 277, 289 (1995)).

Plaintiff's claim for declaratory judgment is duplicative of his breach of contract claim and thus this Court declines to exercise jurisdiction over it. "Put differently, Plaintiff['s] claim for declaratory judgment ... has already ripened into a cause of action for breach of contract, and thus, declaratory judgment on these issues is duplicative and unnecessary." *Gregor v. Rice Drilling D, LLC*, 2024 WL 169119, at *4 (S.D. Ohio Jan. 16, 2024) (citing *Gutierrez v. Selection Mgmt. Sys., Inc.*, 2022 WL 2208761, at *9 (S.D. Ohio June 21, 2022), *dismissed sub nom. Gutierrez, co-Tr. of Charles & Rita Bailey Living Tr. v. Selection Mgmt. Sys., Inc.*, 2022 WL 18396146 (6th Cir. Sept. 22, 2022)) (citing *Putman v. Allstate Ins. Co.*, 2021 WL 1580836, at *3 (S.D. Ohio April 22, 2021) (citing cases)).

The Court finds that, on balance, the *Grand Trunk* factors do not support the exercise of jurisdiction over Plaintiff's claim for declaratory relief. As to the first two factors, issuing a declaratory judgment would not settle the controversy or clarify the legal relations between the parties because the adjudication of the breach of contract claim would already decide those issues. *See Gregor*, 2024 WL 169119, at *4 ("The adjudication of Plaintiffs' breach of contract claim will necessarily decide the status of the contractual relationship.") As to the third and fourth factors, there is no underlying state court proceeding, so these factors cut in favor of issuing a declaratory judgment. As to the fifth and final factor, "'although a declaratory judgment would serve *some* useful purpose in clarifying the legal relations at issue, the breach of contract claim is an alternative remedy that is better or more effective because it will resolve the entirety of the parties' dispute.'" *Id.* (internal quotation marks omitted). Accordingly, this Court's application of the *Grand Truck* factors cuts

26

against issuing a declaratory judgment, and this Court dismisses Count VI to the extent it pleads a claim for a declaratory relief.

### 2. Injunctive Relief

"[A]n injunction is a remedy, not a claim. *Madej v. Maiden*, 951 F.3d 364, 369 (6th Cir. 2020*); MEMC Elec. Materials v. Balakrishnan*, 2012 WL 3962905, at *5 (S.D. Ohio Sept. 11, 2012) (citing *Univ. of Texas v. Camenisch,* 451 U.S. 390, 395 (1981)) ("A preliminary injunction is a remedy used by the court to preserve the status between the parties pending trial on the merits."). Thus, this Court dismisses Count VI to the extent Plaintiff brings it as a separate cause of action for injunctive relief.

Plaintiff may continue to seek injunctive relief. "When faced with requests for a preliminary injunction, district courts consider four factors: (1) the plaintiff's likelihood of success on the merits; (2) the risk of irreparable harm to the plaintiff in the absence of an injunction; (3) the risk that an injunction will harm others; and (4) the broader public interest." *PCC Airfoils, LLC v. Daugherty*, 176 F.4th 509, 512-13 (6th Cir. 2026) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citation omitted). "The preliminary injunction factors do not represent a list of 'prerequisites to be met,' and 'no one factor is controlling.'" *Id*. (citations omitted).

Here, Plaintiff's allegations do not indicate that Plaintiff will suffer irreparable harm should he not be denied injunctive relief. In fact, there is little indication that Defendant's denial of his insurance claim continues to pose "a real immediate threat of future injury." *Finesse Express. LLC v. Total Quality Logistics, LLC*, 2021 WL 1192521, at *5 (S.D. Ohio Mar. 30, 2021) ("A plaintiff requesting injunctive relief must show both 'past injury and a real immediate threat of future injury.'") (quoting *Mosley v. Kohl's Dep't Stores, Inc.*, 942 F.3d 752, 756 (6th Cir. 2019)). Plaintiff also fails to show that being granted injunctive relief would support the broader public interest. In any event,

27

an injunction is not a separate cause of action, so the Amended Motion to Dismiss is granted, and Count VI is dismissed.

In Conclusion, this Court grants the Amended Motion to Dismiss as to Counts IV, V, and VI and denies the Amended Motion to Dismiss as to Counts I, II, and III.

### b.  Motion to Strike and Motion for Leave to File Second Amended Complaint

In the Amended Motion to Strike, Defendant argues that Plaintiff did not obtain leave of court or opposing counsel's permission before filing the Second Amended Complaint and so it argues that this Court should strike the Second Amended Complaint as procedurally improper because it was filed without the Court's authority.  (Doc. No. 21.)  Defendant notably does not argue futility, prejudice, undue delay, or bad faith.  Defendant asserts only that this Court should strike the Second Amended Complaint (Doc. No. 18) and deny Plaintiff leave to amend because Plaintiff has already exercised his opportunity to amend as a matter of course and filed his Second Amended Complaint without first seeking leave of court.

In the Opposition and Motion for Leave to File Second Amended Complaint, Plaintiff "acknowledges that leave was not formally requested prior to filing but respectfully submits that leave should be granted now in the interest of justice." (Doc. No. 22 at PageID# 109.)  Plaintiff argues that the proposed Second Amended Complaint was filed early in the litigation before discovery began or the Court adjudicated any substantive motions. (*Id*. at PageID# 110.)  He also asserts that there is no evidence of bad faith, undue delay, or that amendment would prejudice the Defendant. (*Id*.)  In the Reply, Defendant reiterates that Plaintiff improperly filed the proposed Second Amended Complaint and his status as a *pro se* litigant does not exempt him from following the Federal Rules of Civil

28

Procedure.[10]

The Sixth Circuit has held that as a general matter, "'[i]f it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend." *Brown v. Matauszak*, 415 F. App'x 608, 614 (6th Cir. 2011) (quoting 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1483 (3d ed. 2010)).  "'Particularly where deficiencies in a complaint are attributable to oversights likely the result of an untutored *pro se* litigant's ignorance of special pleading requirements, dismissal of the complaint without prejudice is preferable.'" *Id*. at 614-15 (quoting *Reynoldson v. Shillinger,* 907 F.2d 124, 126 (10th Cir.1990)) (citing *Guerrero v. Hauck,* 502 F.2d 579, 580 (5th Cir. 1974) (dismissal of *pro se* prisoner complaint with prejudice constituted reversible error when defects might have been cured by amendment)); *see also Rashada v. Flegel,* 2024 WL 1367436, at *5 (6th Cir. Apr. 1, 2024) ("Because it was 'very clear' from information presented on appeal that the plaintiff could cure his complaint's deficiencies through amendment.").

This Court grants Plaintiff leave to file an amended pleading.  Here, Plaintiff is proceeding *pro se*, and his lack of legal training may have left him unaware of the technical requirements of Rule 15.  *See Brown*, 415 F. App'x at 614-15; *Gordon v. England*, 354 F. App'x 975, 981-83 (6th Cir. 2009).  At this early stage in litigation, granting leave to amend will not unfairly prejudice Defendant.

---

[10]  The cases cited by Defendant fail to support its argument.  First, Defendant cites to *Caimona v. Ohio Civil Service Employees Association*, 2018 WL 6386023 (N.D. Ohio Dec. 6, 2018) in support.  (Doc. No. 23 at PageID# 113.)  But *Caimona* centers around the plaintiff's failure to timely perfect service of process, and there the district court ultimately found in favor of the plaintiff and denied defendants' motion.  *See* 2018 WL 6386023, at *7.

Second, Defendant's reference to *Bell v. Washington* is unavailing.  (Doc. No. 23 at PageID# 113) (citing No. 4:21-cv-10705 (E.D. Mich. Dec. 18, 2025) (Doc. No. 346)).  There, the district court struck a pro se plaintiff's amended complaint, finding that the deadline to amend had long passed and the plaintiff had also failed to move to amend his complaint.  *Bell*, No. 4:21-cv-10705 (Doc. No. 346 at PageID# 2398.).  In that case, the plaintiff filed an amended complaint more than four years after the original complaint had been filed, and the district court had issued several decisions on dispositive motions.

*Dubuc*, 312 F.3d at 752.  As Plaintiff points out, the proposed Second Amended Complaint was filed early in the litigation before discovery began and before the Court adjudicated any substantive motions.  (Doc. No. 22. at PageID# 110.)

Leave to amend is not appropriate in every scenario.  When amendment would be futile or cause undue delay that would unfairly prejudice the defendant, leave to amend should be denied. *Dubuc v. Green Oak Twp.*, 312 F.3d 736, 752 (6th Cir. 2002).  Not all the defects can be cured through amendment.  As discussed above, Plaintiff's claims for tortious interference with insurance eligibility, intentional infliction of emotional distress, and injunctive relief should be denied as futile.  Because amendment would not cure the deficiencies, any amendment seeking to amend or otherwise revive those claims is not permitted.

Accordingly, Plaintiff's Motion for Leave to File Second Amended Complaint (Doc. No. 22) is granted.  Plaintiff should file an amended pleading with Plaintiff's surviving claims, which include breach of contract (Count I), bad faith (Count II), and defamation (Count III).  Plaintiff should also attach to that pleading a copy of the policy or inform the Court that he does not possess a copy.  This Court will continue to consider the Policy Identification (Doc. No. 6-2) and the Policy Declarations (Doc. No. 6-3) as Exhibits attached to the amended pleading.  The amended pleading should *not* include Plaintiff's claims for tortious interference with insurance eligibility (Count IV), intentional infliction of emotional distress, (Count V), and declaratory and injunctive relief (Count VI) because the Court has already found that those claims as set forth in the Second Amended Complaint would be futile.  **Plaintiff must file any amended pleading and attached exhibits within twenty-one (21) days of the date of this Order.**  Thus, Defendant's Amended Motion to Strike (Doc. No. 21) is denied as moot.

IV.     **Conclusion**

For the reasons set forth herein, the Court finds as follows:

   a. Defendant's Motion to Dismiss the Amended Complaint (Doc. No. 17) and Motion to Strike the Second Amended Complaint (Doc. No. 19) are denied as moot because they are duplicates of later filings.

   b. Plaintiff's Motion for Leave to File Second Amended Complaint (Doc. No. 22) is granted.

   c. Defendant's Amended Motion to Dismiss (Doc. No. 20) is granted in part and denied in part.

      i. This Court grants the Amended Motion to Dismiss as to Counts IV, V, and VI and denies the Amended Motion to Dismiss as to Counts I, II, and III.

   d. Plaintiff's Motion for Leave to File Second Amended Complaint (Doc. No. 22) is granted.

      i. **Plaintiff must file the amended pleading and attached exhibits within twenty-one (21) days of the date of this Order.**

   e. Defendant's Amended Motion to Strike (Doc. No. 21) is denied as moot.

   **IT IS SO ORDERED.**

                                          _s/ Pamela A. Barker_
                                          PAMELA A. BARKER
Date:  June 18, 2026                      U. S. DISTRICT JUDGE

31